And we'll turn to the last case on our day calendar, which is Ecommission Solutions v. CTS Holdings. Mr. Anderson? Thank you. May it please the Court, Counsel, Michael Anderson, on behalf of the appellant, Ecommission Solutions. Summary judgment was not warranted on the summary judgment evidence present in this case. This case, Your Honors, involves a classic example of unfair competition. The appellees collectively referred to as CTS through the course of a business relationship. The evidence on summary judgment is that they obtained confidential client list and pricing information and then later wrongfully used that information and bid out lower pricing to my client's customers. That, Your Honors, I submit, is a classic example of unfair competition. They're saying that this wasn't confidential, that this was just open information that they had gotten, right? That is their argument, Your Honor. What's wrong with that? That argument is wrong. The evidence in the record for summary judgment purposes is that the information was indeed confidential. And let me walk through that. Number one, what you had was between my client, Ecommission Solutions, and Dell. We had an agreement with Dell. There's confidentiality there. Dell, in turn, had a subcontractor relationship with CTS where this was the entire relationship between the parties. That, likewise, had a confidentiality. There was no direct agreement between the parties here. Not a written agreement, but as Mark Lewington, the CEO of CTS, testified, he testified, and this is at the appendix 873, that to the extent CTS learned any of ECS's pricing information, that CTS would need to maintain confidentiality of that pricing information. Moreover, with respect to the client information that was provided to CTS by my client, it was stamped confidential as well. Everything consistent with that, and then sort of balled up in this hearing today, Your Honor, we had an issue, we had a motion for leave to include in the appellate record a prior allegation by CTS in this case, and that was that the CTS pled in its counterclaim that ECS, Ecommission Solutions, and CTS were in a special relationship of trust and confidence as a result of their business relationship over eight years. In other words, take my word for what I just showed, what the evidence is, CTS actually pled in the district court that there was a confidential relationship between the parties. So to answer your question, when, Your Honor, when CTS says the information was not confidential, that is contrary to the facts, and we're not talking about there's been a trial. This is on summary judgment, and the overwhelming summary judgment evidence presented by Ecommission Solutions is that that information was indeed confidential. CTS knew to maintain its confidence. Mr. Anderson, you refer, I'm asking you a question in a kind of clerical capacity as presider. You refer to a motion having been filed, and what action was taken? What was the motion, and what action was taken by the court? It's actually pending in this court the motion for leave to include their prior counterclaim to be in the record. And do we have any objection to that? Yes, they've objected, and this was supposed to be resolved here as part of the entire oral argument. It's in the record, right? I mean, it was in the record of the court below. It certainly is. I mean, it's in the court files for sure, yes. So why, yeah, so don't we get, don't, aren't the entire files . . . We get access to everything down there we want to look at, right? Yes. If your question though was, was it, did we rely on it in response to summary judgment at the trial court, no, we did not. But it's in the court files, there's no question, if that's the question, Your Honor. And so then . . . So in theory, it was something that was before the district court or that it would have considered in principle? I think it has to have been based on the standard for summary judgment, which is anything that's, you know, court can base it . . . But you said even though it was not presented formally in the summary judgment motion. That's right, and let me get to that. It was, let's be very clear, it's an allegation in the counterclaim, right? Yes, there was an allegation in the counterclaim that ECS and CTS were in a special relationship of trust and confidence as a result of their business relationship for over eight years, which is entirely consistent with the evidence that I outlined before, which was where you had a three-party relationship and everything being connected by confidentiality agreements from ECS to Dell. Dell then outsourcing its work to CTS with a confidentiality agreement. So it was all consistent, and their allegation is sort of what I call just the recognition of reality here, and particularly for purposes of summary judgment. Well, that's an assertion that . . . I've got to get my initials right . . . that CTS made in a counterclaim back against your client. That is correct, and we did not deny it. We actually, when we filed our answer to that counterclaim in that particular allegation, we didn't deny it because that was obviously part of our contention is that the parties had a confidential relationship. When you look at the testimony, when you look at the agreements, when you look at the stamp on the document, and where this is going is, this is summary judgment, and the testimony in the record is overwhelming of misuse of our pricing and client information. It is not a whodunit. They actually did it, and the issue is with respect to on the . . . The issue is what is the miss in misuse? So you're saying that this was all confidential. That's exactly right, and that is the miss in the misuse, and that is precisely where I believe the district court erred, is because in the very short analysis on this, where the district court focused entirely on the obtaining of the information, whether it was wrongful, instead of the misuse, which is equally wrongful. So that is the issue where the court erred on that, as we pointed out. Well, it was freely given from your client to CTS, right, the information? But that's not the point that you're saying. It was given in confidence. That's right. So it's not freely given in confidence. Yes. Freely given . . . Right. No. All right. You've reserved some time, Mr. Anderson, and we'll hear from Mr. Glick. Good afternoon, Your Honors. May it please the Court. I'm Stuart Glick with Thompson & Knight, and I represent the CTS appellees in this case. The bottom line is that Judge Forrest actually got it right. She separated the weed from the chaff and came to the correct conclusion that CTS did not do anything fraudulent, deceptive, or abusive to gain any information from ECS. Leaving that aside, getting the information is one thing. Using it after that is another. That's what your adversary is focusing on. And I think, Your Honor, that in this case, the key would be that there was nothing prohibiting my client from using that information afterwards for the reason that there was no confidentiality here. Well, let's stop at that because that ties into this motion that's before us. Why shouldn't we just grant the motion and deem what you said in your counterclaim an admission that this information was confidential? The reason, Your Honor, is twofold. First, this argument was never raised below to the district court, and this argument was not raised to this court in the opening brief that was filed. This argument was first raised in the reply brief that the appellants filed, and the request to include in the appendix this pleading was not made until after we moved to strike that argument. Well, whether it's in the appendix or not, it's part of the record. It was large, so... That's correct, but there was... Tell us why we shouldn't consider it, and I think you're headed in that direction. Yes, Your Honor, you should not consider it because the argument was waived. They did not raise this argument below with the district court. They did not argue, look, CTS has already admitted that it has this special relationship and it doesn't... in which it says we have this special confidential relationship. That's correct, Your Honor. They never raised that argument. Even though it's articulated as part of a pleading on behalf of CTS, it's not a fact to be considered on summary judgment. That's correct, Your Honor, and I think, let me clarify it a little more. This was not in the live pleading. This allegation was in a prior pleading that had been superseded by an amendment by CTS, and in the amendment, CTS not only did not include this allegation, which, by the way, it was in a negligent misrepresentation claim, and it was a summary statement in a negligent misrepresentation claim that CTS, as parties should do, is that it amended its pleading when the facts did not bear up to this claim. So this was in a prior pleading. It was not in the pleadings before the court, before Judge Forrest, when Judge Forrest made her decision. So that is not a judicial admission. That is simply some evidence of a prior statement. But the facts here show that that prior statement is a party admission. Well, it is not a judicial admission. It is simply a statement. And it is not probative under the facts here, where even as counsel has stated in his argument today that there was just, he quoted, a business relationship. But the reality was there was no direct relationship between these parties. There was a relationship between Dell and ECS. And in that relationship, ECS was permitted to sell the Dell software package that included CTS's component. Then there was a separate agreement between Dell and CTS. Now, we've heard some argument here today by ECS that somehow, because there was confidentiality in each of these agreements, that somehow it sort of relates back to some connection. But there wasn't. ECS did file a cause of action. One of their claims was for third-party beneficiary status. And that was denied and dismissed. And that was never appealed. So ECS has no rights under the CTS and Dell agreement. They argued that there was confidentiality here, but there was no ever, they can't show any place in agreement of confidentiality. Confidentiality just can't be thrust upon a party unilaterally. There must be some agreement. There must be some acceptance. There must be some neutrality. I'm sorry. Didn't CTS's statement say there's a confidential relationship? Pardon me? The one that you don't want us to consider? They stated that there was a relationship of trust, but that was in a prior pleading that had been dismissed, that had been dropped. But they said it, right? It was played. If I were trying a criminal case and somebody had said that and said, oh, well, I didn't really mean it, it doesn't mean I can't prove that they said that in the first instance. And doesn't that create facts and dispute with respect to what the relationship was? No, Your Honor. Not when we look at the entire package of what we have here. And what we have here is that it's well established that parties dealing at arm's length, which is at best what these were, and where they actually were competitors. And that's the other part we must remember. CTS and ECS were always competitors. CTS never stated it was not a competitor. In fact, in the agreement between CTS and Dell, CTS retained the right to compete, to get the same business. So the idea that known competitors are in this relationship is belied by the actual facts. And certainly there is not a fiduciary or confidential relationship, which are the same thing in New York law, unless the parties agree to it. The reason, Your Honor, that this was not raised below, and should not be considered here, is that if it had been raised below, these would have been addressed before the district court. But the district court did have all this information before her, and Judge Forrest did not so find, because the overwhelming facts were that it showed that there was no confidentiality. But the other part we can't forget is the issue is not only was there a confidential relationship, but was there an abuse? And what we don't have in the record is not a single fact showing that at any time did CTS actually solicit any customer of ECS. There's no fact in the record to show that any customer of ECS solicited by CTS, fired ECS, and went with CTS. There's nothing showing that in the record. Now, we found some reference to some testimony of the CEO of CTS regarding what was wrong, regarding what was agreeing to be confidential. And the key to that, and the question that was never asked by ECS, is the following. Mr. Lewington's full testimony is that he only agreed that the prices should be kept confidential and should not be used to compete during the term of the reseller agreement. That's the agreement between Dell and ECS. And the reason for that was in the agreement between Dell and CTS, CTS agreed that it would not solicit any customer who was receiving the CTS package as part of the Dell overall package. So the key there, when Mr. Lewington said he had to keep this information confidential, he couldn't use it to compete with CTS, is two things. First, that was only during the term of the reseller agreement. And second, it had nothing to do with whether it was confidential information by ECS or non-confidential. It had everything to do with CTS was not allowed to solicit customers who were receiving the Dell package. That was what was clear here. That was what's missing from Appellant's statement. It had nothing to do with confidentiality. It had everything to do with not violating its agreement, CTS' agreement with Dell, because it was Dell's subcontractor. And that was what was driving it on that issue. The other point, as well, that I just want to get to in the time I have, is that there were no damages that had been proven that ECS could show that CTS was a significant cause of. There's nothing in the record. They have an expert report that assumes liability. They never connect the dots. They never show that the reason this customer left, because they can't show any specific customer left, had anything to do with CTS and that they were damaged by CTS. So there's no damages here. The one thing they did rely on is this Hamlet certification or declaration that I'm sure counsel will get to. But this was a declaration by a former employee of American Express. Now, what this was was that Mr. Hamlet had worked at American Express. American Express was a customer of ECS. When the reseller agreement expired, ECS no longer had the authority to sell the Dell products. But it never told CTS and it never told Dell that it was secretly preparing its own product that was unknown to them. Their only knowledge was that once the reseller agreement between Dell and ECS expired, that these customers would have to look elsewhere to get the services. One of the customers was American Express. American Express, Mr. Hamlet had worked at American Express, but he had left three months prior to American Express leaving ECS and going to Dell. He put in a certification. The certification lacks any foundation as to how he could know what happened three months after he left the company. He says my understanding, but never explains what his understanding is. But putting all that aside, what he also says is that Dell made a lower offer, not CTS. And what appellant has done throughout this is conflate Dell and ECS and CTS. Dell and CTS were two separate entities. ECS sued Dell in Texas and severed with Dell in that lawsuit. CTS is not Dell. So they can't show that CTS made an offer to anyone. And they cannot also show that there were any damages they ever suffered. Thank you, Your Honor. Thank you, Mr. Glick, very much. Mr. Anderson, you have reserved some time. Thank you, Matt. Please, the Court. I want to address these four points in quick succession. The first thing is, counsel stated that Mr. Lewington, the CEO, that when he testified that CTS understood that the pricing was confidential and couldn't be used, that somehow what I heard was that somehow that only applied during the term of the reseller agreement. For this trial lawyer, that would have been an incredible moment to impeach Mr. Lewington if he gave that explanation at trial because that was not his testimony that's in the record. It was a complete statement that they understood it was confidential. They knew they shouldn't use it and, moreover, knew that it was wrong to use. And the part about being wrong to use is at the appendix 878 through 79. The next thing I want to address is this notion of no use. To hear that argument that somehow CTS did not use our information is completely undercut by the summary judgment evidence. And in particular, as one piece, if you look at appendix 1026, beginning there, there's an e-mail with a series of attachments that has, it is A1026, which is an e-mail from Mark Lewington, the CEO of CTS, to Stephen Cherico at Dell, who's now with CTS. And if you look at the attachment, this is what I would call the biggest smoking gun of misuse of information because it shows ECS's pricing and how it has a chase column where it says who's going to chase, and it's CTS and Dell, and Jonathan Hamblett absolutely connects in his affidavit, CTS, and there was zero objection to that affidavit. I'm out of time, and I appreciate your indulgence. Thank you. Thank you. We'll reserve the decision, and we are adjourned.